# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| COREY FONDREN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:18CV1102 JCH |
| MICHAEL WHITE, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment, filed April 30, 2020.  (ECF No. 59).  The motion is fully briefed and ready for disposition.[1]

## BACKGROUND[2]

Prior to the incident in question on June 3, 2017, Plaintiff Corey Fondren had been arrested by St. Louis County police officers on numerous occasions[3], for charges including Destruction of Private Property and Peace Disturbance in 2010, Possession of Marijuana in 2010, and Leaving the Scene of an Accident in 2011.  (Defendants' Facts, ¶ 2).  Plaintiff had also pled guilty to the crime of Assault in 2012, and further had two orders of protection issued against him.  (*Id.*, ¶¶ 3, 5).

---

[1] Plaintiff never filed a substantive response to Defendants' motion, despite having been granted additional time within which to do so.

[2] The Court's background section is taken primarily from Defendants' Statement of Facts in Support of their Motion for Summary Judgment ("Defendants' Facts"), to which Plaintiff did not file a response.  "Facts set forth for the purpose of a motion for summary judgment are deemed admitted unless controverted by the opposing party."  *Dyer v. Blankenship*, No. 4:07CV2105 AGF, 2011 WL 1226941, at *19 n 4 (E.D. Mo. Mar. 30, 2011) (citing Fed.R.Civ.P. 56(e); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  As Plaintiff failed to controvert Defendants' Facts, the Court deems the facts admitted.

[3] Plaintiff had fled from the St. Louis County police on at least one occasion prior to the incident at issue.  (Defendants' Facts, ¶ 4).

On May 27, 2017, one week prior to the incident at issue, Defendant Police Officer Joshua Mace ("Mace") investigated a complaint by Mark Bouchie and David Cameron, that Plaintiff was stalking Mr. Cameron's daughter and causing a disturbance. (Defendants' Facts, ¶ 8). During his investigation Mace was informed by Plaintiff's mother that Plaintiff can become aggressive. (*Id.*, ¶ 10). Plaintiff's mother further informed Mace that Plaintiff had been diagnosed with bipolar disorder and schizophrenia, and that he was not taking his medication for the diseases. (*Id.*, ¶ 11).[4]

On June 3, 2017, Defendant Police Officers Michael White ("White"), Alexandra Saul ("Saul") and Mace were employed and on duty as police officers, and dressed in full St. Louis County Police Department police uniforms. (Defendants' Facts, ¶ 1). On that day, Plaintiff admits he was in the parking lot at 3801 Vaile Road at 2:00 a.m. (*Id.*, ¶ 15).[5] Plaintiff had previously been wandering around the strip mall, at times waving his hands, and talking about being an FBI agent. (*Id.*, ¶ 14).[6] Plaintiff informed Defendants Mace and Saul that he was their boss, and they were fired. (*Id.*, ¶ 18). Plaintiff further glared at Defendant White in a menacing and agitated way, and placed himself in an aggressive fighting posture. (*Id.*, ¶ 19).

Defendants entered the substation to discuss options regarding how to handle Plaintiff. (*See* Defendants' Exh. 1, P. 7). While they were inside Plaintiff stood in front of the door, and used his foot and body weight to trap Defendants in the substation. (*Id.*; Defendants' Facts, ¶ 20). Defendant Mace repeatedly ordered Plaintiff to move away from the door, but Plaintiff

---

[4] Plaintiff further has been diagnosed with cannabis use disorder and depression. (Defendants' Facts, ¶ 12).
[5] During the time at issue, Vaile Road consisted of a strip mall, with businesses including a St. Louis County Police substation, a bus station, and a parking lot. (Defendants' Facts, ¶ 13).
[6] Plaintiff is not an FBI agent, and has no law enforcement training. (Defendants' Facts, ¶ 16).

refused to do so. (Defendants' Facts, ¶ 21). Plaintiff eventually violently pushed the substation door into Defendant Mace, striking his chest. (*Id.*, ¶ 22).[7]

Defendant Mace advised Plaintiff that he was under arrest, and ordered him to get on the ground. (Defendants' Facts, ¶ 24). Plaintiff did not comply, instead assuming a "fighting stance." (*Id.*). Defendants utilized various methods in their attempt to arrest and secure Plaintiff, including ordering him to get to the ground and place his hands behind his back, and tasing him, to no avail.[8] (*Id.*, ¶ 29). Instead Plaintiff fled, eventually arriving at 15513 Jost Main, an address in a neighborhood with private homes. (*Id.*, ¶¶ 28, 31-32).

Although he did not know the residents, Plaintiff ran to the door of 15513 Jost Main and knocked hard. (Defendants' Facts, ¶ 33). Defendant White, who had been chasing Plaintiff, feared both for his own safety and for the residence occupants' safety. (*Id.*, ¶¶ 34-35).[9] In order to gain control, White informed Plaintiff he was under arrest. (*Id.*, ¶ 36). He reached out to grab Plaintiff, but due to Plaintiff's resisting movements, instead of grabbing his shoulder White's hand hit Plaintiff's face. (*Id.*). For his part, Plaintiff admits he swung his arm, attempting to punch White. (*Id.*, ¶ 38). Plaintiff in fact struck White on the left side of his face. (*Id.*, ¶ 37).

Defendant White then used his body weight to bring Plaintiff to the ground. (Defendants' Facts, ¶ 39). White continued to give Plaintiff clear commands to stop resisting, and to put his hands behind his back, but Plaintiff ignored the orders. (*Id.*, ¶ 41). Instead, Plaintiff admits he was squirming, twisting and rolling his body, and moving his arms, head, torso and every part of his body before he was handcuffed. (*Id.*, ¶ 42).

---

[7] On May 23, 2019, Plaintiff pled guilty to assaulting Defendant Mace. (Defendants' Facts, ¶ 23; Defendants' Exh. 9).
[8] On May 23, 2019, Plaintiff pled guilty to resisting arrest. (Defendants' Facts, ¶ 27; Defendants' Exh. 9).
[9] White testified he was especially concerned because he did not know if Plaintiff was armed with a weapon. (Defendants' Facts, ¶ 35).

Defendant White eventually straddled Plaintiff's upper shoulders and head, trying to handcuff his left arm. (Defendants' Facts, ¶ 49). Plaintiff then bit White's inner left thigh, and White struck Plaintiff on the right side of his body to get him to stop biting. (*Id.*, ¶ 50). Plaintiff then reached for White's firearm, trying to remove it from its holster while continuing to fight White. (*Id.*, ¶ 51).[10]

Plaintiff eventually was handcuffed by Defendants Mace and Saul, but continued to resist by kicking his legs, rolling his body, pulling his arms, twisting and turning. (Defendants' Facts, ¶¶ 57-58). Plaintiff's resistance was so severe that the officers had to shackle his legs. (*Id.*, ¶ 59).

After Plaintiff was subdued, he was transported to SSM DePaul Hospital. (Defendants' Facts, ¶ 66). The medical records of SSM DePaul Hospital note that Plaintiff's eyes, musculoskeletal system and body were normal; they do not note that he complained about his eye, elbow or thumb. (*Id.*, ¶¶ 67-68). Plaintiff eventually was transported to the St. Louis County Justice Center ("County Jail"), where he was housed in the infirmary and seen by nurses, doctors and psychiatrists, with access to medical care at all times. (*Id.*, ¶¶ 69-70). During his stay at the County Jail Plaintiff did not complain to any of these medical personnel about his eye, elbow or thumb. (*Id.*, ¶ 71). Instead, he complained only about his shoulder and knee, and that was only after he had been at the County Jail for almost two weeks.[11] (*Id.*, ¶ 72). After spending over a year at the County Jail, Plaintiff was transferred to Metropolitan Psychiatric Center ("MPC") in September of 2019, where he was examined regularly by doctors, nurses and a psychiatrist. (*Id.*, ¶¶ 73-75). The records from Plaintiff's initial examination by a physician at

---

[10] On May 23, 2019, Plaintiff pled guilty to attempting to disarm White of his duty weapon. (Defendants' Facts, ¶ 54; Defendants' Exh. 9).

[11] Plaintiff told the nurse that his shoulder soreness was related to a gunshot wound he suffered in early 2017, prior to his present incarceration. (*See* Duffie Aff., ¶ 21).

MPC do not reflect problems with Plaintiff's vision, eyes, body or thumb, nor do they indicate that Plaintiff had musculoskeletal problems, back deformities, arthritis, back pain, joint pain, muscle stiffness or weakness, or skin problems.  (*Id.*, ¶ 76).

Plaintiff filed his original Complaint in this matter on July 5, 2018.  (ECF No. 1).  In his Third Amended Complaint, filed January 28, 2019, Plaintiff alleges that Defendants used excessive force during the course of his arrest on June 3, 2017.  (ECF No. 26).  Specifically, he claims as follows:

- While Plaintiff was handcuffed, Defendant Mace "sat on top of [his] back and applied pressure to [his] elbow trying to break it."  Plaintiff claims that he suffered a bruise to his right elbow with pain going all the way down to his hand for approximately one month.
- While Plaintiff was lying down and handcuffed with his hands behind his back, Defendant Saul used a lighter to burn his thumb "for over 10 seconds."  Plaintiff claims that he suffered a permanent blister on his thumb as a result of this force.
- While Plaintiff was lying down and handcuffed with his hands behind his back, Defendant White used his right foot to kick him in the head.  Plaintiff claims he suffered a bruise to his left eye and was unable to see for weeks out of said eye as a result of White's actions.

(*Id.*, PP. 5-10).[12]

As noted above, Defendants filed the instant Motion for Summary Judgment on April 30, 2020, asserting there exist no genuine issues of material fact and they are entitled to qualified immunity on Plaintiff's claims of excessive force.  (ECF No. 59).

## SUMMARY JUDGMENT STANDARD

---

[12] On December 26, 2019, Plaintiff attempted to file a Fourth Amended Complaint, in which he reversed the allegations lodged against Defendants Mace and White.  (ECF No. 50).  The Court denied Plaintiff leave to file the Fourth Amended Complaint, as the Case Management Order set the deadline for amendment of pleadings as May 22, 2019, and the majority of the discovery in the case (including Plaintiff's deposition) had already been conducted.  (ECF No. 52).  As Plaintiff testified to his revised allegations during his deposition, however, the Court will address them in this Memorandum and Order.

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## DISCUSSION

In a recent opinion United States Magistrate Judge Noelle C. Collins of this Court provided a detailed analysis of the doctrine of qualified immunity, which the Court quotes at length here:

> The qualified immunity doctrine "shields government official[s] from civil damage liability for discretionary action that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known.'" *De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017), *reh'g denied* (June 5, 2017), *cert. denied*, --- U.S. ----, 138 S.Ct. 737, 199 L.Ed.2d 604 (2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity is not available "if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [individual], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury.'" *Harlow*, 457 U.S. at 815, 102 S.Ct. 2727 (quoting *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (internal quotations omitted).[13]

In determining whether an officer is entitled to qualified immunity, the Court employs a two-step analysis that asks: (1) whether the alleged facts, when viewed in the light most favorable to the plaintiff, demonstrate that the official's conduct violated a constitutional right; and (2) whether the constitutional right being asserted is clearly established. *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010) (cited cases omitted). The Court may address either question first. *Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). "If either question is answered in the negative, the public official is entitled to qualified immunity." *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (quoted case omitted). "To avoid pretrial dismissal, a plaintiff must present facts showing the violation of a constitutional right that was clearly established at the time of defendant's act." *De La Rosa*, 852 F.3d at 743.

Under the Fourth Amendment, the test for determining whether excessive force was used under the first prong of the analysis is whether "the amount of force used was objectively reasonable under the particular circumstances." *Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)). *See also Hicks v. Norwood*, 640 F.3d 839, 842 (8th Cir. 2011) ("It is settled in this circuit that the Fourth Amendment's 'objective reasonableness' standard for arrestees governs excessive-force claims arising during the booking process."). The Court determines "whether a use of force was reasonable by balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

---

[13] "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) (internal quotation marks and citation omitted).

> The "[r]easonableness of a seizure is determined by the totality of the circumstances and must be judged from the viewpoint of a reasonable officer on the scene." *McCoy v. City of Monticello*, 342 F.3d 842, 848 (8th Cir. 2003) (citing *Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865). Thus, the reasonableness of force depends on the circumstances confronting the officers, including factors such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Shannon v. Koehler*, 616 F.3d 855, 862 (8th Cir. 2010) (citing *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). This inquiry is objective, questioning "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, 109 S.Ct. 1865; *see also McCoy*, 342 F.3d at 848 (reasonableness "must be judged from the viewpoint of a reasonable officer on the scene, irrespective of the officer's underlying intent or motivation.") The Court "must assess the actions of each officer 'from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). "This calculus allows for the fact that police officers are often forced to make split-second decisions—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Brown*, 574 F.3d at 496 (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). "Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." *McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011) (quoting *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007)) (internal quotation omitted).

*Lombardo v. St. Louis City*, 361 F.Supp.3d 882, 892-894 (E.D. Mo. 2019).

After careful review of the record, including the video of the incident submitted by Defendants, the Court concludes that Defendants' actions were objectively reasonable under the circumstances. *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017). As noted above, "the reasonableness of force depends on the circumstances confronting the officers, including factors such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Lombardo*, 361 F.Supp.3d at 893 (citations omitted). Here, Defendants' encounter with Plaintiff began with him acting erratically, by informing Defendants Mace and Saul that he was their boss and they were fired, and placing himself in an aggressive fighting

posture. Plaintiff trapped Defendants in the substation, and eventually violently pushed the substation door into Defendant Mace. Plaintiff then actively resistied arrest, first by fleeing, and then by punching and biting Defendant White, ignoring orders to place his hands behind his back, squirming, twisting and rolling his body, and reaching for White's gun.[14] Finally, White testified that he feared both for his own safety, and for the safety of the occupants of the home Plaintiff approached. Under these circumstances, the Court concludes that Defendants' actions were objectively reasonable under the circumstances, and thus they are entitled to qualified immunity on Plaintiff's excessive force claims. *Ryan*, 850 F.3d at 427. *See also Lombardo*, 361 F.Supp.3d at 906 ("Defendant Officers' use of force was reasonable given [Plaintiff's] struggle and continued resistance both before and after he was on the ground in the prone position."); *Dyer*, 2011 WL 1226941, at *15 ("On this record, the evidence as to the force used is largely undisputed, and supports a conclusion that Defendants…each used a minimal amount of force that was reasonable under the circumstances. While there is some evidence that [Defendant] Jones was actually straddling [Decedent's] back at some point in time, this evidence does not make the force used unreasonable, considering their initial struggle and [Decedent's] continued resistance.").

As further support for its ruling, the Court notes that pursuant to Eighth Circuit law, "the court may consider the degree of injury sustained 'insofar as it tends to show the amount and type of force used.'" *McAllister v. Dean*, No. 4:13CV2492 CEJ, 2015 WL 4647913, at *5 (E.D. Mo. Aug. 5, 2015) (quoting *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011); *cf. Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015) (degree of injury is factor to be considered in excessive force claim brought under Fourteenth Amendment)). Here, immediately after

---

[14] As noted above, Plaintiff eventually pled guilty to assaulting Defendant Mace, resisting arrest and attempting to disarm White of his duty weapon.

Plaintiff was subdued, he was transported to SSM DePaul Hospital. Medical records from that institution do not note that Plaintiff complained about his eye, elbow or thumb. Plaintiff further did not complain about those body parts during his stays at the County Jail or MPC, despite having regular access to doctors and nurses. Under these circumstances, the Court finds that "any injuries that plaintiff sustained as a result of his encounter with [Defendants] were minor and support a conclusion that the force used was minor." *McAllister*, 2015 WL 4647913, at *5 (citing *Grider v. Bowling*, 785 F.3d 1248, 1252 (8th Cir. 2015) (use of force not excessive where plaintiff alleged no injuries occurred from officer's action); *see also Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) (relatively minor scrapes and bruises and less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries that support the conclusion that officer did not use excessive force)). Defendants' Motion for Summary Judgment must therefore be granted. *See Foster v. Metropolitan Airports Com'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) ("We do not believe that Foster's allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are sufficient to support his claim of excessive force.").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 59) is **GRANTED**, and Plaintiff's claims are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 24th Day of July, 2020.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE